UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTY INSURANCE COMPANY, as subrogee of Melissa and Jeffrey Wilkins, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  4:20-cv-00957-AGF |
| SIEMENS CORPORATION, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Liberty Insurance Corporation, as subrogee of insureds Melissa and Jeffrey Wilkins, asserts claims of negligence and strict products liability based on an allegedly defect within a Siemens/Murray brand breaker panel manufactured by Defendant Siemens Corporation (the "subject breaker panel"), which Plaintiff believes caused a fire in the insureds' home.

The matter is now before the Court on Defendant's motions (ECF Nos. 36 & 38) for summary judgment and to exclude the testimony of Plaintiff's expert witnesses, Brian Nettleton, and Michael Presson.  For the reasons stated below, the Court will grant the motion to exclude the testimony of Presson, subject to reconsideration if Defendant does not in fact stipulate to Presson's two opinions prior to the start of trial.  But the Court will deny the motions to exclude Nettleton's testimony and for summary judgment.

## BACKGROUND

For the purpose of the motions before the Court, the record establishes the following. Defendant manufactured the subject breaker panel, and the panel was installed in the basement of the insureds' residence in 2008 by the non-party company Bieler Electric. The subject breaker panel operated for seven years without any report of problem.

The subject breaker panel was not subject to any recall. However, the panel contained circuit breakers also manufactured by Defendant. The parties dispute whether any of the circuit breakers was subject to a recall. Specifically, on September 23, 2010, Defendant and the U.S. Consumer Products Safety Commission (CPSC) issued a recall of Defendant's Siemens and Murray circuit breakers, load centers, and meter combos with date codes between June 2010 through August 2010. *See* ECF No. 36-7, Def.'s Ex. G. The recall stated that these circuit breakers had "a spring clip that can break during normal use, leading to a loss of force to maintain a proper electrical connection in the panelboard," which could "lead to excessive temperature, arcing or thermal damage at the connection point, and damage to the panelboard's electrical insulation and [could] result in a fire, property damage, or personal injury." *Id.*

In July 2014, the insureds' residence underwent a renovation that included the addition of a dormer to the second floor, along with associated electrical and HVAC work performed by non-party contractors Target Electric, Franklin County Construction, and JC's Heating & Cooling. No other electrical work was performed at the insureds' residence prior to the fire at issue.

On July 21, 2015, a fire occurred at the insureds' residence.  There is no dispute that the fire originated in the subject breaker panel located in the basement of the residence.[1]  At the time of the fire, the subject breaker panel contained Murray brand circuit breakers manufactured by Defendant but also contained one "Square D" brand circuit breaker manufactured by non-party Schneider Electric.  The damage to the circuit breakers in the panel was so extensive that the date codes on many of the circuit breakers were wholly illegible post-fire.  Specifically, date codes on Defendant's Murray brand circuit breakers located in the panel at positions one/three, five/seven, nine/eleven, thirteen, two/four and six/eight were illegible post-fire.  The Square D circuit breaker was located in position 13.

Based on their examinations of the subject breaker panel post-fire, the parties' experts have come to different conclusions regarding the cause of the fire and whether any recalled Siemens/Murray circuit breakers were present in the panel prior to the fire.  Defendant's expert contends that the fire was caused by a poor connection due to an installation failure with respect to the Square D breaker that likely occurred in connection

---

[1]     This uncontroverted fact forms the basis of Defendant's motion to exclude Presson's testimony.  Presson, a certified fire investigator, opined that (1) the fire occurred within the southwest corner of the basement, and (2) the origin of the fire was within the subject breaker panel.  *See* ECF No. 38-1, Def.'s Ex. A.  Defendant does not contest Presson's qualifications or methodologies but argues that Presson's testimony is not relevant because Presson's conclusions are not in dispute.  Although Plaintiff responds that, absent stipulation, Presson is entitled to present his testimony to the jury, there is no indication at this stage that Defendant would not stipulate to Presson's opinions.  Therefore, the Court will grant Defendant's motion to exclude Presson, subject to reconsideration if Defendant does not in fact stipulate to Presson's two opinions prior to the start of trial.

with the insureds' 2014 home renovation.  Defendant's expert further contends that,

notwithstanding some of the illegible date codes, based on permit history, appearance,

and other equipment date codes, none of the circuit breakers in the subject breaker panel

fell within the date-code range subject to the 2010 recall.

Plaintiff's expert, Nettleton, reached a different conclusion, discussed below.

**Nettleton's Report**

Nettleton, an electrical engineer, participated in a joint destructive examination of

the subject breaker panel post-fire.  Based on his examination and analysis, Nettleton

concluded that the wiring external to the panel had no evidence of a failure and was

eliminated as a potential ignition source; examination of the load side screw down

terminations for all circuit breakers revealed no evidence of a high resistance connection

or any other type of failure; and that arc damage to the wiring inside the panelboard was

likely the result of "fire/heat attack" inside the panelboard.  ECF No. 38-2, Def.'s Ex. B.

Nettleton then described the 2010 recall as it related to defective spring clips.

Nettleton opined that "[e]xamination of the circuit breakers with damage revealed at least

three of the Murray brand breakers [were] missing the spring clips as described in the

recall; unfortunately, the damage was so extensive the date code was not legible on the

breakers to confirm they were within the recall."  *Id.*

Nevertheless, Nettleton opined that:

Based on the scene and laboratory examinations the origin of the fire was
within the Siemens/Murray panelboard. The ignition source for the fire was
a high-resistance connection/arcing event at the circuit breakers/power
supply buss connection. The heat and arcing events ignited the adjacent
combustible material including plastic, paper, and wire insulation. Based on

the CPSC recall, the most probable cause of the fire is a failure of the spring clip as described in the recall.

*Id.*

## Defendant's Motions to Exclude Nettleton and for Summary Judgment

Defendant argues that Nettleton's opinion is speculative and unreliable, and that Nettleton fails to rule out alternative causes.  Defendant further argues that summary judgment is warranted because, without Nettleton's testimony, Plaintiff has failed to establish a defect in the subject breaker panel and failed to establish causation.

## DICUSSION

## Motion to Exclude Expert Testimony

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702.  *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to exclude unhelpful and unreliable expert testimony.

Factors relevant to the reliability determination include: "(1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citations omitted). Additional factors include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

"[T]he *Daubert* reliability factors should only be relied upon to the extent that they are relevant and the district court must customize its inquiry to fit the facts of each particular case." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). "The question is whether the expert's opinion is sufficiently grounded to be helpful to the jury." *Id.* at 1012.

Although the proponent of the expert testimony must prove its admissibility by a preponderance of the evidence, *Daubert*, 509 U.S. at 592, Rule 702 "is one of admissibility rather than exclusion." *Shuck*, 498 F.3d at 874. "The inquiry envisioned by Rule 702 is a flexible one," designed to exclude "vague theorizing based on general

principles" or "unsupported speculation," but not requiring an opinion to be "a scientific absolute in order to be admissible." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914-16 (8th Cir. 2017), *as corrected* (Aug. 14, 2017). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). And any "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

## Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences drawn from the record. *Combs v. The Cordish Companies, Inc*., 862 F.3d 671, 680 (8th Cir. 2017). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted).

## Nettleton's Testimony

The Court concludes, and Defendant does not dispute, that Nettleton is qualified to offer his opinion regarding the alleged product defect as it relates to fire causation. The Court also finds that Nettleton's testimony would be helpful to the jury in determining the existence of a product defect and the question of causation.

Defendant's primary contention is that Nettleton's conclusion is not sufficiently supported.  In support of this contention and citing its own expert's testimony, Defendant argues that Nettleton fails to consider the Square D circuit breaker or potential installation error, and fails to adequately connect the subject panel and breakers to the breakers at issue in the 2010 recall.

But Nettleton's conclusions are not "so fundamentally unsupported that [they] can offer no assistance to the jury." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 865 (8th Cir. 2010).  Rather, they are supported by his product examination, observations, and analysis, including his observation of missing spring clips.  *See, e.g.*, *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 726 (8th Cir. 2015) ("[W]e have consistently upheld the admission of expert testimony as to the cause of a fire when the expert applied specialized knowledge to observations of a fire scene that had record support."); *Ross v. Ford Motor Co.*, No. 7:01CV610, 2003 WL 25773619, at *9 (D. Neb. July 25, 2003) (denying a motion to exclude electrical engineering expert's testimony regarding fire causation where the expert opined as to likely cause of fire being kinked or crimped wiring based on his observation of the damaged wires and its consistency with the alleged defect).  Nettleton also appropriately considered and ruled out alternative causes, such as any potential failures in external wiring.  *See, e.g.*, *Hickerson v. Pride Mobility Prod. Corp.*, 470 F.3d 1252, 1257 (8th Cir. 2006) (holding that a fire investigation expert's opinions as to point of origin and alternative causes were reliable where "he examined burn patterns, examined heat, fire, and smoke damage, considered this evidence in light of testimony regarding the fire, and . . . considered as possible causes of the fire those

devices that contained or were connected to a power source and that were located at the identified point of origin").

The inconsistencies and deficiencies described by Defendant and Defendant's expert speak to the weight rather than admissibility of Nettleton's testimony and may be explored on cross-examination. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.").

**Motion for Summary Judgment**

Defendant's motion for summary judgment rests on and largely mirrors its motion to exclude Nettleton's testimony. Defendant does not raise an independent basis for summary judgment. For the reasons stated above, the Court concludes that Defendant's challenges to Nettleton's testimony raise questions of credibility that should go to the jury. The same holds true with respect to Defendant's motion for summary judgment.

**CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to exclude testimony of experts Brian Nettleton and Michael Presson is **GRANTED in part and DENIED in part**, as set forth above. ECF No. 38. The motion is **GRANTED** as to Michael Presson, subject to reconsideration if Defendant does not stipulate to Presson's two opinions prior to the start of trial; the motion is **DENIED** as to Nettleton.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **DENIED**.  ECF No. 36.

**IT IS FURTHER ORDERED** that, within **14 days** of the date of this Memorandum and Order, the parties shall file a notice advising the Court of whether it would be productive to engage in further mediation.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of May, 2022.